Patrick M. Flatley
United States Bankruptcy Judge

Dated: Monday, December 19, 2016 4:12:14 PM

# IN THE UNITED STATED BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE: )
)
CORWIN PLACE, LLC, ) Case No. 16-bk-750
)
      Debtor. ) Chapter 11
)

## MEMORANDUM OPINION

On November 17, 2016, Corwin Place LLC (the "Debtor") filed a motion to disqualify the law firm representing Premier Bank's ("Premier"), its principal creditor. Premier filed a response in opposition to the Debtor's motion and the court conducted a hearing on the matter on November 30, 2016. At the hearing, the court requested supplemental briefing regarding the standards federal courts employ in addressing motions to disqualify and seeking clarification on certain factual points. Having received the additional submissions from the parties, the matter is now ripe for disposition.

The Debtor asserts that the court should disqualify Premier's counsel, Bailey & Glasser, based upon a conflict of interest stemming from the Debtor's principal, Charles Corwin, previously consulting with Bailey & Glasser regarding potential lender liability claims that he wished to bring on behalf of the Debtor against Premier. In response, Premier alleges that the scope of the consultation was limited such that Corwin was merely a prospective client of Bailey & Glasser's. Thus, Premier asserts that West Virginia Rule of Professional Conduct 1.18 controls and was not violated because no significantly harmful information was shared between Charles Corwin and Bailey & Glasser.

For the reasons set forth hereinafter, the court will deny the Debtor's motion to disqualify Bailey & Glasser.

## I. BACKGROUND

Charles Corwin is the principal of the Debtor. On December 9, 2015, Corwin contacted Bailey & Glasser by telephone, at which time he discussed his potential case against Premier Bank

1

with a paralegal for the firm. During the course of that conversation, Corwin informed the paralegal that he was interested in pursuing lender liability claims against Premier. He speculated that his claims were worth $12 to $15 million. Tony Clackler, an associate attorney for Bailey & Glasser, attempted to return Corwin's telephone call, but left a voicemail after failing to reach Corwin. On December 14, 2015, Corwin returned Clackler's phone call and left a voicemail after the call went unanswered. On December 15, 2015, Corwin and Clackler spoke for the first time. During the telephone conversation, they scheduled an appointment on December 22, 2015 to meet and discuss the case.

On December 22, 2015, Clackler and Corwin did not meet. Corwin mistakenly traveled to the Morgantown office of Bailey & Glasser where he spoke with a different attorney while Clackler worked in the Charleston, West Virginia office. On that same day, Corwin emailed[1] Clackler the Fifth Amendment to the Forbearance Agreement between the Debtor and Premier. On the same day, Clackler responded that he would be away on holiday until January 4, 2016, but that Corwin should send the note indicating the loan obligation the Debtor owed to Premier and any additional forbearance agreements between the same. This email also contained a reminder that Bailey & Glasser had not agreed to represent Corwin or the Debtor at that time.

On January 11, 2016 Corwin forwarded an email from an attorney associated with the law firm of Bowles Rice, LLP, who represented Premier at that time that included the second, third, and fourth amendments to the forbearance agreement between the Debtor and Premier. On January 14, 2016, Corwin followed up, inquiring as to whether Clackler had reviewed the materials supplied on the 11th. Clackler informed Corwin, again by email, that he was reviewing the documents and discussing the potential for entering into representation of the Debtor with his supervisor. On January 15, 2016, Corwin emailed Clackler that he had more information to share with him. Corwin then called Clackler on January 27, 2016, leaving a voicemail indicating the same. Corwin again reached out to Clackler on January 29, 2016 stating that he was anxious to hear back from the firm because Premier was contemplating demanding payment in full under the note. Clackler responded by arranging a phone call for that afternoon.

On February 1, 4, and 8, 2016, Corwin sent emails to Clackler which included pictures of the real estate development central to the dispute between the Debtor and Premier, email

---

[1] All emails to and from Corwin came from the account of his wife Marlene Corwin.

conversations between Corwin and representatives of Premier, and contact information for an attorney involved in the matter. On February 9, 2016, Clackler informed Corwin he was reviewing all of the materials supplied. On February 16, 2016, Corwin forwarded an email to Clackler which indicated that Bailey & Glasser represented him in this matter. On February 18, 2016, Clackler sent a final email indicating that Bailey & Glasser did not represent the Debtor or Corwin and would not do so going forward. No further communication occurred between the parties.

While Bailey & Glasser was contemplating representing the Debtor it did not represent and had not previously represented Premier. Premier approached Bailey & Glasser about representing it in the Corwin litigation in October 2016. It then entered an appearance on behalf of Premier in this case on November 4, 2016. Shortly thereafter, on November 17, 2016, the Debtor filed its motion to disqualify.

## II. DISCUSSION

The West Virginia Rules of Professional Conduct apply in this court. N.D.W. Va. L.R. Gen. P. 84.01. "A failure to adhere to those rules may require disqualification." *CSX Transp. Inc. v. Gilkison*, Doc. No. 05-202, 2006 WL 3203419, at *1 (N.D.W. Va. Nov. 3, 2006). However, "disqualification is a drastic measure which courts should hesitate to impose except when absolutely necessary." *University of West Virginia Bd. Of Trustees v. VanVoorhees*, 33 F. Supp.2d 519, 520 (N.D.W. Va. 1998).

Motions to disqualify are not favored because of the overwhelming preference to permit litigants to elect their own counsel and the potential "of opposing parties to misuse disqualification motions for strategic reasons." *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992). Thus, courts are to "avoid overly-mechanical adherence to disciplinary canons" so as to preserve "litigants' rights freely to choose their counsel." *Id*. "Nevertheless, the guiding principle in considering a motion to disqualify counsel is safeguarding the integrity of the court proceedings." *Zachair, Ltd. v. Driggs*, 965 F.Supp. 741, 750 (D. Md. 1997). Thus, courts "must not weigh the circumstances with hairsplitting nicety but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing an appearance of impropriety," resolve all doubts in favor of disqualification. *U.S. v. Clarkston,* 567 F.2d 270, 273 fn. 3 (4th Cir. 1977) (*citing Gas-A-Tron of Arizona v. Union Oil Co. of California*, 534 F.2d 1322, 1324-25 (9th Cir. 1976). However, a "stronger objective indicator . . . than simple judicial intuition is needed to warrant the drastic step of disqualification of counsel." *Shaffer*, 966 F.2d at 145.

3

Although courts must consider the specific factual circumstances surrounding a motion to disqualify, evidentiary hearings are not necessary in every instance. *United States v. Philip Morris Inc.*, 312 F.Supp.2d 27, 34-35 (D.D.C. 2004). Rather, courts must gather enough evidence to fairly make a decision and preserve the record for appellate review. *Id.* If a court receives adequate facts through affidavits, documents, or other submissions, it has discretion to determine that discovery is unnecessary. *Id.*[2]

The Model Rules of Professional Conduct, as adopted by the West Virginia Supreme Court of Appeals (hereinafter "Rule") differentiate between prospective, current, and former clients when assessing conflicts of interest. In matters dealing with a prospective client, Rule 1.18 governs, whereas Rule 1.09 applies for conflicts with former clients, and Rules 1.07 and 1.08 apply for current clients. The nature of the attorney-client relationship governs which rule applies: if no such relationship formed, but an attorney and a prospective client interacted on a specific matter, then Rule 1.18 applies; if an attorney-client relationship applies but has since been terminated, the client is a former client and 1.09 applies; and if an attorney-client relationship formed and was not terminated, the rules for current representation apply.

West Virginia law has long held an attorney-client relationship forms when a client expresses "a desire to employ" an attorney and the attorney consents "to act for him in a professional matter." *Keenan v. Scott*, 61 S.E. 806, 809 (W. Va. 1908). If no such meeting of the minds occurs, but an attorney willingly interacts with an individual about undertaking potential representation of that individual, then a prospective attorney-client relationship forms and Rule 1.18 governs any potential conflicts of interest. W. Va. R.P.C. 1.18(a).

Rule 1.18 provides that attorneys owe two clear duties to prospective clients: (1) they must not use or reveal information provided by the prospective client except as would be permitted in cases involving former clients and (2) they "shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter." W. Va. R.P.C. 1.18(b) and (c). Notably, the standards set forth in this rule are liberalized from the conflicts rules involving former or current clients. W. Va. R.P.C. 1.18 cmt. 6

---

[2] In the matter at hand the parties agreed to submit the matter to the court for a ruling on the basis of the briefing and the exhibits presented in connection therewith. The court likewise perceives the record to be adequately developed and ripe for disposition.

4

(noting that a "lawyer is not prohibited from representing a client with interests adverse to those of the prospective client in the same or a substantially related matter unless the lawyer has received from the prospective client information that could be significantly harmful if used in the matter.") Rule 1.09, on the other hand, prevents an attorney from representing a client "in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client" in all cases unless the former client gives informed consent confirmed in writing. Thus, the key difference in the rules for conflicts with prospective clients and former clients is that a conflict of interest only bars representation of an adverse party of the prospective client if the consultation produced information that was significantly harmful to the prospective client.

In cases governed by Rule 1.09, "the burden of establishing that a substantially related matter exists is on the former client. Once it is established that the matters are substantially related, the court will presume that confidential information was divulged during the earlier representation, thereby avoiding disclosure of the very information which is to be protected." *State Ex. Rel. Ogden Newspapers v. Wilkes*, 566 S.E.2d 560, 563 (W. Va. 2002). The clear justification for such a presumption is to protect any disclosure of information protected by attorney-client privilege. *Id*. The parties have not presented, nor has the court been able to locate, any case regarding whether such a presumption applies under Rule 1.18. However, such a presumption may always be rebutted, although the evidence available to an attorney seeking to rebut a presumption may be limited by a duty to avoid disclosing privileged information.

In this case, the parties concede that no attorney-client relationship formed between Corwin or the Debtor and Bailey & Glasser. Thus, the parties agree that Rule 1.18 governs whether a conflict of interest exists. The Debtor asserts that a presumption exists that confidential information was divulged during the earlier representation, and that such a presumption should be expanded to include presuming that the disclosed information would be harmful to it in this proceeding. Moreover, the Debtor asserts that an appearance of impropriety exists such that allowing the representation to continue is improper. Bailey & Glasser argues that it has set forth substantial evidence into the record to indicate that no harmful information was disclosed, thus the representation is permitted under the West Virginia Rules of Professional Conduct, and therefore disqualification would be improper.

Bailey & Glasser has presented substantial evidence on the record documenting the communications between Corwin and the firm and particularly Clackler. Based on the evidence set forth, all of the information shared with Clackler or other members of the firm consisted of information that was already in the possession of Premier. For instance, all of the emails forwarded to Clackler were comprised of communications between Corwin and representatives of Premier. Moreover, Premier was a party to all of the documents Corwin sent to Clackler. Thus, it is clear that none of the information shared with Bailey & Glasser via email could be harmful to the Debtor in the case of its bankruptcy or the related adversary proceeding. Furthermore, the telephonic and personal discussions between Corwin and members of the firm were limited in length and frequency. Moreover, Bailey & Glasser presented substantial documentation of the notes taken by its attorneys and paralegals stemming from these discussions. None of the notes indicated that Corwin shared information that could possibly be significantly harmful. Based on the abundance of evidence provided by Bailey & Glasser, it clearly rebutted any presumption that harmful information was shared during its consultation with Corwin. As the burden falls to the movant in a motion to disqualify, and as the Debtor failed to provide any evidence of potentially harmful information that Corwin shared with Bailey & Glasser, the Debtor fails to demonstrate that Bailey & Glasser violated Rule 1.18.

The Debtor relies heavily on *Healthnet, Inc. v. Health Net, Inc.* to stand for the proposition that an appearance of impropriety is enough to disqualify counsel in federal courts. 289 F.Supp.2d. 755 (S.D.W. Va. 2003). In that case, Judge Goodwin disqualified counsel for violating Rule 1.09 by representing a client in a matter substantially related to his representation of a former client when the current and former client's interests were directly adverse. *Id*. Furthermore, the court explained that it "continue[d] to adhere to the rule that courts determining whether to disqualify counsel should act to prevent the appearance of impropriety." *Id*. at 758. The court further explained that an appearance of impropriety exists if the moving party can show "that a reasonable former client would be concerned by the conflict."

This court finds the rationale in *Healthnet* unpersuasive within the context of the facts of this case. First, Judge Goodwin found that the appearance of impropriety evidenced the violation of Rule 1.09; an appearance of impropriety alone was not the basis for disqualification. Moreover, to apply the *Healthnet* objective standard for when an appearance of impropriety signals a violation of Rule 1.09 to Rule 1.18 would melt away the key difference in those rules. As explained above,

Rule 1.18 bars representation of a client if an attorney possesses information that would be *significantly harmful* to the prospective client in the matter at hand. Such a requirement is absent from Rule 1.09. If courts were to find that Rule 1.18 was violated when a reasonable prospective client would be concerned by the conflict, the limited protection offered by Rule 1.18 would be expanded to the level of protection set forth in Rule 1.09. Undoubtedly, reasonable prospective clients are concerned when they encounter, as opposing counsel, the firm with which they previously consulted. However, comment 6 to Rule 1.18 makes it abundantly clear that such a representation is permissible "unless the lawyer has received from the prospective client information that could be significantly harmful if used in the matter." As noted, the record here fails to show a violation of that standard.

Furthermore, federal courts have held that, without more, "the possible appearance of impropriety . . . is simply too weak and too slender a reed on which to rest a disqualification order." *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 723 (7th Cir. 1982) (*citing Armstrong v. McAlpin*, 625 F.2d 433, 445 (2d Cir. 1980). This analysis from the Second and Seventh Circuits is particularly convincing as motions to disqualify are not looked upon favorably in this Circuit or in others. As disqualifications "may not be rested on mere speculation that a chain of events whose occurrence theoretically could lead counsel to act counter to his clients interest might in fact occur" and as the Debtor was only able to set forth hypothetical situations which may harm it, the motion to disqualify must be denied. *Shaffer v. Farm Fresh, Inc.*, 955 F2d 142, 145 (4th Cir. 1992).

### III. CONCLUSION

Therefore, the Debtor has not satisfied his burden to demonstrate that Corwin shared significantly harmful information during his consultation with Bailey & Glasser. Moreover, Premier has rebutted any presumption that such harmful information was shared by producing documentation of virtually every communication between Corwin and Bailey & Glasser. Therefore, the court does hereby

**ORDER** that the Debtor's Motion to Disqualify Counsel (Doc. No. 106) filed November 17, 2016, is DENIED.